Kenneth Stohner, Jr.
State Bar No. 19263700
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000 - Telephone
(214) 661-6803 – Telecopier

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | **§** | |
| | **§** | |
| **PROTOM INTERNATIONAL, INC.** | **§** | **CASE NO. 15-32065-BJH-11** |
| **PROTOM INTERNATIONAL, LLC** | **§** | **CASE NO. 15-32066-SGJ-11** |
| | **§** | |
| **DEBTORS.** | **§** | **CHAPTER 11** |
| | **§** | |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 105 AND 364 (C)AND (D); (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(B) AND (C); AND (III) GRANTING RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

ProTom International, Inc. and ProTom International, LLC (collectively "Debtors"), debtors in the above-numbered bankruptcy case ("Case") by their proposed attorneys, Jackson Walker L.L.P., move for interim and final orders (i) authorizing debtors to obtain post-petition financing pursuant to 11 U.S.C. §§ 105 and 364 (c) and (d); (ii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c); and (iii) granting related relief.

## I.
## BACKGROUND

1. On May 12, 2015 (the "Petition Date"), Debtors commenced these cases by each filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. Debtors remain in possession of their assets and continue to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3. No trustee, examiner or committee of creditors has been appointed in these cases.

4. The factual background regarding each Debtor, including its current and historical business operations and the events precipitating these Chapter 11 filings, is set forth in detail in the Declaration of Stephen L. Spotts in Support of First Day Motions ("Spotts Declaration") which is incorporated herein by reference.

5. Michaelson Capital Partners, LLC ("Michaelson") is a senior secured lender to the Debtors pursuant to an Amended and Restated Secured Convertible Promissory Note dated December 29, 2014 (Amended Note") in the principal amount of $10,138,091, amending the original Secured Promissory Note dated June 10, 2014, in the original principal amount of $7,250,000 (the "Michaelson Loan").  The Michaelson Loan is secured by substantially all the assets of the Debtors under a Security Agreement dated June 10, 2014.  On April 27, 2015, Michaelson loaned the Debtors the additional amount of $388,322.34 (the "Additional Michaelson Loan" and collectively with the Michaelson Loan, the "Pre-Petition Secured Loan"), which was secured by the same collateral securing the Amended Note.  As of the Petition Date, the total amount owed under the Pre-Petition Secured Loan is estimated to be $6,485,829.80.

6. Michaelson is able and willing to lend up to $1,861,677.70 under the proposed DIP Facility to fund the Debtors operations in Chapter 11.

## II.
## SUMMARY OF RELIEF REQUESTED

7. Post-petition financing is vital to Debtors' ability to continue to operate their business during these chapter 11 cases and to Debtors' successful reorganization. If Debtors are unable to properly finance their business, they risk being forced to cease all operations and a fire

sale liquidation which would not benefit the existing creditors and might destroy much of the work done to develop the Radiance 330 and complete the McLaren Agreement and MGH Agreement.

8. To obtain post-petition financing, Debtors have engaged in good faith and arms-length negotiations with Michaelson. These negotiations have culminated in Michaelson's agreement to provide Debtors with post-petition financing on the terms and subject to the conditions set forth below.

9. The post-petition financing will be made available pursuant to a Debtor-in-Possession Loan Agreement ("DIP Facility"), a copy of which is attached hereto as Exhibit "A."

10. Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, below is a summary of the essential terms of the DIP Facility. The following is only a summary of terms and the DIP Facility should be reviewed as to the complete terms and conditions.

| **Borrower:** | **PROTOM INTERNATIONAL, INC.** |
|---|---|
| **Pledgor:** | **PROTOM INTERNATIONAL, LLC** |
| **Lender:** | **MICHAELSON CAPITAL SPECIAL FINANCE FUND LP** |
| **DIP Facility:** | Facility consisting of a priming, superpriority, term credit facility in the amount of up to $1,861,677.66. |
| **Budget:** | "**Budget**" means the following (each in form and substance satisfactory to the Lender) in the case of the initial Budget (delivered as a condition to the funding of the Interim DIP Facility) (the "**Interim Budget**"), a 13-Week statement of sources and uses for the next 13 weeks of the Debtors' operations acceptable to the Lender, broken down by week (a "**13-Week Projection**"), and thereafter, within 30 days of the entry of the Interim DIP Order, and then at the end of each six week period (unless requested earlier by the Lender), an updated 13-Week Projection for the subsequent 13 week period, broken down by week in form and substance satisfactory to the Lender. The 13-Week Projection will provide the Debtors' best estimate of the forecasted week ending book balance of cash, outstanding checks, deposits-in-transit, other reconciling items and the estimated bank balances of cash. Any underlying assumptions for the Debtors' anticipated uses of the DIP |

| | |
|---|---|
| | Facility shall be subject to approval by the Lender. The Budget must be satisfactory to Lender in all respects, including the amount and the proposed recipient of any proposed payment or use of cash collateral or proceeds from the DIP Facility.<br><br>Borrower will provide, on Friday of each week, a variance report/reconciliation for the prior week (i) showing actual cash receipts and disbursements for the immediately preceding week, noting therein all variances, on a line-item basis, from values set forth for such period in the prior Budget, and shall include explanations for all material variances, and (ii) certified by the chief financial officer of the Debtors.<br><br>For each week, the aggregate actual variances on a rolling weekly basis must be no greater than 110% ("**Weekly Permitted Variance**") of the aggregate amount of projected disbursements for such prior week period as set forth in the Budget.<br><br>Lender shall advance funds upon request by Borrower on a weekly basis as needed for payment of the projected disbursements under the Budget. |
| **Closing Date:** | The date on which the Final DIP Order is entered. |
| **Maturity Date:** | The earliest to occur of: (i) stated maturity which shall be the later of 60 days after the Closing Date or 90 days after the Petition Date, (ii) the effective date of an approved Plan of Reorganization, (iii) conversion of the Cases to a Chapter 7 proceeding or (iv) any other termination of the DIP Credit Agreement in accordance with the Final DIP Order or the DIP Credit Documents. |
| **Priority/Security for DIP Facility:** | All obligations of the Borrower to the Lender under the DIP Facility shall be: (a) entitled to superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code superior to any and all administrative expenses of Debtors; (b) secured, pursuant to Section 364(d) of the Bankruptcy Code, by a first priority, security interest in and lien on all currently owned or hereafter acquired assets and property of the estates of Borrower and Pledgor (as defined in the Bankruptcy Code), real and personal, of Debtors, including inventory, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, deposit accounts, general intangibles (including, without limitation, all tax refunds, copyrights, licensing agreements, patents, trademarks, and trade names), instruments, real property, securities and other investment property, all cash collateral, wherever located (the "**Collateral**"), subject only to valid and unavoidable liens that are in existence on the Petition Date and that are expressly approved by the Lender in writing. The Collateral securing the DIP Facility shall not include causes of action under Chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**").<br><br>The liens and superpriority claims granted as provided above to the Lender shall be subject in each case only to a carve-out (the "**Carve-Out**") which shall be comprised of the following: (i) all fees required to be paid to the Clerk of the |

| | |
|---|---|
| | Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (ii) the amount set forth in the Budget for the payment of professionals retained by the Debtors on terms approved by the Bankruptcy Court. |
| **Loan Payments:** | No amortization payments will be required. |
| **Interest, Fees and Expenses regarding the DIP Facility:** | Interest Rate: From the Closing through maturity, the simple interest rate will be 12.00% *per annum*.<br><br>Default Interest: 4.00% above the then current rate of interest.<br><br>Borrower agrees to pay the costs and expenses of the Lender as set forth in the Section titled "Fees and Expenses" below.<br><br>If the outstanding principal amount of the Note is not repaid by the Maturity Date, Borrower shall pay a post-maturity premium in addition to the interest rate specified herein above in an amount equal to 2.5% of the amount of the outstanding principal amount that is unpaid on the tenth day after the Maturity Date |
| **DIP Order** | Interim funding under the DIP Facility up to $712,559 (the "**Interim DIP Facility Amount**") will be subject to (and will not occur until) the entry of an order in form and substance satisfactory to the Lender entered after an interim hearing (the "**Interim DIP Order**"). The Interim DIP Order shall include the same terms, conditions and protections as the Final DIP Order but shall provide that the Interim DIP Facility Amount shall be used by Debtors to: (i) finance ongoing working capital needs of Debtors in connection with the Cases consistent with the Interim Budget; and (ii) pay administrative costs associated with the Cases consistent with the Interim Budget.<br><br>Final funding under the DIP Facility will be subject to (and will not occur until) the entry of an order in form and substance satisfactory to the Lender entered after a final hearing based on the standards prescribed in Bankruptcy Rule 4001(c) and other applicable law and that has not been reversed, modified, amended or stayed (the "**Final DIP Order**"), (a) approving all aspects of the DIP Facility including, without limitation, the administrative expense super-priority of and the existence and priority of all liens securing the DIP Loan Documents, and the rights, remedies and obligations thereunder and (b) providing for such other normal protections in favor of the Lender and the liens securing the DIP Facility as the Lender and its counsel deem necessary. The Interim DIP Order and the Final DIP Order are collectively referred to as the "**DIP Order**".<br><br>The DIP Order shall provide for usual and customary protections for Lender, including, but not limited to, (a) Debtors' and their respective estates' waiver of any right to assert a surcharge or other claim under Section 506(c) of the Bankruptcy Code against any of the Collateral, and waiver of such rights in the DIP Order, (b) a waiver of any right to assert or require marshaling of any |

|  | |
|---|---|
|  | Collateral, (c) a waiver of any right to assert the "equities of the case" exception in section 552 of the Bankruptcy Code and (d) preclusion of any post-petition financing on a priming or *pari passu* basis, other than the DIP Facility. |
| **Fees and Expenses:** | Borrower shall pay or reimburse Lender for all reasonable costs and expenses of the counsel (including, without limitation, local counsel) for the Lender relating to the DIP Facility which amounts shall be due at Maturity. |
| **Representations and Warranties** | The DIP Credit Documents shall contain representations and warranties made by the Debtors under the Pre-Petition Credit Documents, modified as necessary to reflect the financial condition of Borrower, the commencement of the Case, the entry of "first day" orders and the Budget. |
| **Covenants:** | Financial Covenants**:**<br>The DIP Credit Documents will contain the following financial covenants:<br><br>(a)  All advances under the DIP Facility shall be subject to the Budget.  Debtors will be obligated to comply with and make disbursements in accordance with the Budget subject to the Weekly Permitted Variance as specified above.<br><br>(b)  The Debtors shall be required to comply with all deadlines set forth in the Section titled Milestones below.<br><br>Affirmative and Negative Covenants:<br><br>The Debtors (with respect to itself and each of its subsidiaries) agrees to comply with and be bound by the affirmative and negative covenants set forth in Pre-Petition Credit Agreement modified as necessary to reflect the financial condition of Borrower, the commencement of the Case, the entry of "first day" orders and the Budget. |
| **Reporting:** | The Debtors agrees to the following affirmative covenants:<br><br>(a)  delivery to Lender of periodic updates of the Budget and weekly variance reports/reconciliation;<br><br>(b)   delivery to Lender of all reports that either of the Debtors is obligated to deliver to the Pre-Petition Lender under the Pre-Petition Credit Documents;<br><br>(c)  delivery of monthly reports of payables detail and aging (including any disputed payables);<br><br>(d)  participating in weekly meetings and/or teleconferences with the Lender and its representatives with respect to the Budget and other matters reasonably requested by the Lender;<br><br>(e)  delivery to the Lender in advance of filing, if practicable, with the Bankruptcy Court all "first day motions" and proposed forms of order, the proposed forms of the Interim DIP Order and the Final DIP Order (which must be  in form and substance satisfactory to the Lender), all other material motions, proposed orders |

| | |
|---|---|
| | and other pleadings related to the Case generally, the DIP Facility or which could impact the Budget or a sale of the Debtors' assets outside of the ordinary course of business, any plan of reorganization or liquidation, and/or any disclosure statement related to such plan;<br><br>(f)  additional reporting requirements reasonably requested by the Lender, including, without limitation, either cooperating with or allowing for monthly (or more frequently if requested by the Lender) collateral examinations (and the Debtors agrees to cooperate fully with any such collateral examinations); and<br><br>(g)  providing Lender with access to information (including historical information) and personnel as it may reasonably request, including, without limitation, regularly scheduled meetings (at times as mutually agreed) with senior management and other company advisors and the Lender and its advisors, and Lender shall be provided with access to information regarding cash and liquidity management, operational and restructuring activities, as it may reasonably request. |
| **Events of Default** | The DIP Facility shall be subject standard events of default for credit facilities of this nature and size, including the following:<br><br>(a)  The Final Order Entry Date shall not have occurred within 30 days after the Interim Order Entry Date;<br><br>(b)  The Case shall be dismissed or converted to a Chapter 7 Case; a trustee, receiver, interim receiver or receiver and manager shall be appointed in the Case, or a responsible officer or an examiner with enlarged powers shall be appointed in the Case; or any other superpriority administrative expense claim or lien which is *pari passu* with or senior to the claims or liens of the Lender under the DIP Facility or the Pre-Petition Lender shall be granted in the Case without the consent of the Lender;<br><br>(c)  Other than as required by the Bankruptcy Code, or as may be permitted in the DIP Credit Documents or herein as permitted by the Bankruptcy Court, the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness or payables, unless approved by the Bankruptcy Court;<br><br>(d)  The Bankruptcy Court shall enter an order granting relief from the automatic stay to any creditor or party in interest (other than the Lender or the Pre-Petition Lender) (i) subject to the entry of the Final DIP Order, to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtors which have an aggregate value in excess of an amount to be agreed, or (ii) to permit other actions that would have a material adverse effect on the Debtors or its estate or the value of the Collateral or the interests of the Lender in the Collateral;<br><br>(e)  An order shall be entered reversing, amending, supplementing, staying for a period of five days or more, vacating or otherwise modifying the Interim DIP Order or the Final DIP Order, or the Borrower or any affiliate shall apply for authority to do so, without the prior written consent of the Lender, or the Interim DIP Order or Final DIP Order with respect to the DIP Facility shall cease to be in full force and effect; |

| | |
|---|---|
| | (f) Prior to the entry of the Final DIP Order, any judgments which are in the aggregate in excess of an amount to be agreed as to any post-petition obligation shall be rendered against the Debtors and the enforcement thereof shall not be stayed (by operation of law, the rules or orders of a court with jurisdiction over the matter or by consent of the party litigants); or there shall be rendered against either of the Debtors a non-monetary judgment with respect to a post-petition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the ability of the Debtors to perform obligations under the DIP Credit Documents or the value of the Collateral or the interests of Lender in the Collateral;<br><br>(g) A plan shall be confirmed in the Cases that does not either provide for termination of the DIP Commitment Amount under the DIP Facility and payment in full in cash of the Debtors' obligations under the DIP Facility on or shortly after the effective date of such plan of reorganization or liquidation or is otherwise agreed to by Lender or any order shall be entered which dismisses any of the Cases and which order does not provide for termination of the DIP Commitment Amount under the DIP Facility and payment in full in cash of the Debtors' obligations under the DIP Facility or is otherwise agreed to by Lender, or either of the Debtor shall seek, support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order;<br><br>(h) Any material provision of the DIP Credit Documents shall cease to be effective or shall be contested by any Debtor;<br><br>(i) The Debtor shall fail to comply with the Interim DIP Order or Final DIP Order; and<br><br>(j) A final non-appealable determination by a court with respect to any motion, pleading or proceeding brought by another party which results in a material impairment. |
| **Conditions Precedent:** | The extension of the aforementioned financing arrangement is subject to the fulfillment of a number of conditions to the Lender's satisfaction, including, but not limited to, the following:<br><br>(a) The execution and delivery, in form and substance acceptable to Lender and its counsel, of customary agreements, documents, instruments, financing statements, evidences of corporate authority, and such other writings to confirm and effectuate the DIP Facility as may be required by Lender or by its counsel;<br><br>(b) Other than the filing of the Cases, no material adverse change in Debtors' assets, liabilities, business, financial condition, business prospects, or results of operations have occurred since the Petition Date;<br><br>(c) Other than the filing of the Cases, as to the Debtors there shall exist no action, suit, investigation, litigation, or proceeding pending or threatened in any court or before any arbitrator or governmental instrumentality not previously known to Lender and that is not subject to the automatic stay and (i) would be expected to |

| | |
|---|---|
| | have a material adverse effect on Debtors' assets, liabilities, business, financial condition, business prospects, or results of operations or which could impair either Debtor's ability to perform satisfactorily under the DIP Facility, or (ii) would be expected to materially and adversely affect the DIP Facility or the transactions contemplated thereby;<br><br>(d) With respect to the Interim DIP Facility Amount, Lender shall have received, each in form and substance satisfactory to Lender, (i) the Interim Budget; (ii) interim financial statements for the Debtors as of a date not more than thirty (30) days prior to the closing date of the DIP Facility; and (iii) copies of the Debtors' "first day" motions and the related proposed orders;<br><br>(e) Lender shall have received, in form and substance satisfactory to Lender, the Budget;<br><br>(f) The Debtors shall be incompliance with all deadlines set forth in the Section titled Milestones below; and<br><br>(g) The Bankruptcy Court shall have entered a DIP Order authorizing the financing of Debtors as set forth in the DIP Facility, which shall be final and in full force and effect. In addition to the contents of the DIP Order set for the above, the DIP Order shall provide for, among other things:<br><br>• Approving all the terms and conditions of the DIP Facility and any loan, security and other financing agreement relating thereto, including, without limitation, the DIP Credit Documents;<br><br>• Authorizing and directing Debtors to grant the liens and security interests in favor of the Lender as provided in the DIP Facility;<br><br>• A finding by the Bankruptcy Court that Lender's financing of the Debtors is extended in good faith;<br><br>• That all the terms and conditions in the DIP Order may not be modified without the consent of Lender;<br><br>• That upon the occurrence and during the continuance of a default after five (5) days' notice and opportunity to cure, (i) Lender shall be fully authorized, in its sole discretion, to terminate the DIP Facility and/or demand payment of the amounts outstanding under the DIP Facility, and (ii) take any action necessary to preserve and protect the Collateral, subject to the Debtor's right to seek relief from the Bankruptcy Court within such five (5) day period with regard to the alleged default;<br><br>• That (i) after five (5) days from the date of a notice of default if filed with the Bankruptcy Court with respect to the Case, the automatic stay under Section 362 of the Bankruptcy Code will be automatically lifted without further order of the Bankruptcy Court to allow Lender to take any and all actions, as if no case were pending under the Bankruptcy Code, , subject to the Debtor's right to seek relief from the Court within such five (5) day |

| | |
|---|---|
| | period with regard to the alleged default, and (ii) any further order of the Bankruptcy Court which authorizes (x) the use of cash collateral, including accounts receivable, inventory and proceeds thereof, of Debtors in which Lender has an interest, or (y) under Section 362 of the Bankruptcy Code, the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest held by Lender or which is entitled to priority administrative status which is equal or superior to that granted to the Lender, shall be prohibited unless within such five (5) day period of time the Bankruptcy Court determines that no default occurred and is continuing; and<br>• That no order of the Bankruptcy Court shall be entered at the request or with the support of the Debtors which authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest held the Lender or which is entitled to priority administrative status which is equal or superior to that granted to the Lender. |
| **Milestones** | The Debtors shall be required to comply with the following (the "Milestones"):<br>(a) On or before May 12, 2015 or such later date as may be agreed to in writing by the Lender (the "**Initial Deadline**"), the Debtors shall each file in the Chapter 11 Cases and properly serve a motion seeking approval of the Sale Procedures Order<br>(b) On or before the date that is sixteen (16) days after the Initial Deadline, or such later date to the Lender consents in writing in its sole discretion, the Bankruptcy Court shall have held a hearing on the Sale Procedures Motion.<br>(c) On or before the date that is sixty (60) days after the Initial Deadline, or such later date to which the Lender consents in writing in its sole discretion, the Debtors shall have held the Auction.<br>(d) On or before the date that is sixty-five (65) days after the Initial Deadline, the Bankruptcy Court shall have entered a Sale Order approving the 363 Sale, the results of the Auction and the winning bid received at the Auction.<br>(e) Unless the Lender has agreed, in its sole discretion, on or before the date that is (x) seventy-seven (77) days after the Initial Deadline, if a waiver of the stay set forth in Bankruptcy Rule 6004 is obtained, or (y) eighty-four (84) days after the Initial Deadline, if such a waiver is not obtained, the Debtors shall have consummated the 363 Sale, pursuant to the 363 Asset Purchase Agreement or pursuant to the Third-Party Asset Purchase Agreement with the Winning Bidder.<br>(f) Debtors shall have the right to file a plan of reorganization if the terms of the bid of a prospective buyer can only be accomplished through a plan of reorganization. |

| | |
|---|---|
| **Other Definitions** | "***363 Asset Purchase Agreement***" means, at the election of Borrower, either (i) a form of an asset purchase agreement upon which terms prospective buyers will submit bids and under which the Pre-Petition Lender (or its designee) is allowed to "credit bid" all or a portion of its claims in respect of the Pre-Petition Credit Facility and assume certain obligations and indebtedness of the Debtors, including, without limitation, all outstanding indebtedness under the DIP Facility as consideration for the purchase of substantially all of the assets of the Debtors, or (ii) a Third-Party Asset Purchase Agreement.<br><br>"***363 Sale***" means the sale of all or substantially all of the assets of the Debtors under Section 363 of the Bankruptcy Code.<br><br>"***Auction***" means an auction held in connection with the 363 Sale and in accordance with the provisions set forth in the Sales Procedures Order.<br><br>"***Sale Order***" means the order entered by the Bankruptcy Court in form and substance satisfactory to the Lender, in its sole discretion that, among other things, approves the 363 Sale, the results of the Auction and the Winning Bidder's bid received at the Auction.<br><br>"***Sale Procedures Motion***" means a motion seeking entry of the Sales Purchase Order, which motion shall be in form and substance reasonably satisfactory to the Lender.<br><br>"***Sale Procedures Order***" means an order approving (a) the Bidding Procedures to be applicable to the 363 Sale and (b) subject to higher and better bid, the 363 Asset Purchase Agreement.<br><br>"***Third-Party Asset Purchase Agreement***" means an asset purchase agreement by and among the Debtors and a third party purchaser that provides for the purchase and sale of substantially all of the assets of the Debtors, which third party purchaser and asset purchase agreement are satisfactory to the Lender in its sole discretion.<br><br>"***Winning Bidder***" means the bidder that (i) agrees at the Auction to purchase all or substantially all of the assets of the Debtors pursuant to a Third-Party Asset Purchase Agreement, and (b) is approved by the Bankruptcy Court in the Sale Order. |
| **Governing Law:** | All documentation in connection with the DIP Facility shall be governed by the laws of the state of New York, subject to applicable federal bankruptcy laws. |

11. Debtors submit that these terms are reasonable for financing of this type.

## III.
## RELIEF REQUESTED

12. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

13. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

14. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 364.

16. By this Motion, Debtors request the entry of the Interim Order and Final Order (i) authorizing Debtors to obtain the DIP Facility from the DIP Lenders on the terms set forth above, pursuant to Bankruptcy Code sections 105, 361, 362, 363, and 364; and (ii) scheduling a final hearing pursuant to Bankruptcy Rule 4001(b) and (c).

## IV.
## BASIS FOR EXPEDITED RELIEF

### A. Applicable Authority for Obtaining DIP Financing

17. Bankruptcy Code section 364(c) and (d) provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if:
>
> (A) the trustee is unable to obtain such credit otherwise; and

> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

18. Debtors who exercise sound business judgment, within the confines of the policies underlying the Bankruptcy Code, in obtaining post-petition financing are afforded deference by courts. *See In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

19. Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization for debtor in possession financing and provides, in relevant part: The court may commence a final hearing on a motion for authority to obtain credit no earlier than 15 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 15 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

20. Debtors seek entry of the Interim Order in order to avoid immediate and irreparable harm to the estate. Accordingly, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to grant the relief requested herein.

**B. Michaelson is Entitled to Priming Liens as Set Forth in the DIP Facility**

21. Pursuant to Bankruptcy Code section 364(c), if a debtor is unable to obtain post-petition credit on an unsecured basis, a court may authorize the debtor to obtain post- petition credit or incur post-petition debt which entitles the post-petition lender to priming liens, a first-priority lien on unencumbered property of the debtor, and superpriority administrative expense status. 11 U.S.C. § 364(c)(1), (2), and (3). Michaelson is the only current secured creditor of Debtors.

22. A debtor seeking post-petition financing must make reasonable efforts to seek credit on an unsecured basis, but the debtor is granted deference by the court if the court finds

the debtor acted within its business judgment when seeking out alternative sources of financing. *See, e.g. Bray* v. *Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085 (4th Cir. 1986). Moreover, a debtor is not required to exhaustively seek out every potential source of post-petition financing. *Id. See also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *In re Baxco Corp.*, 148 B.R. 855, 860 (Bankr. N.D. 111, 1992).

23. Debtors have unsuccessfully sought other alternatives to the DIP Lenders. Debtors negotiated in good faith and at arms-length with Michaelson, despite the relationships between Michaelson and Debtors. To date, Michaelson is the only lender that offered sufficient post-petition financing to Debtors during these Chapter 11 proceedings. Accordingly, Debtors' efforts to obtain necessary post-petition financing satisfy the requirements of Bankruptcy Code section 364(c).

**C. Debtors Could Not Obtain Alternative Financing and the Pre-petition Senior Secured Lenders' Interests Are To Be Adequately Protected**

24. Bankruptcy Code section 364(d) allows post-petition financing that provides a post-petition lender a senior or equal lien on a debtor's encumbered property (a "priming" lien) if (i) the debtor could not obtain alternative financing and (ii) the interests of the secured parties whose security interests are being primed are adequately protected. See 11 U.S.C. § 364(d)(1).

25. Substantially all of Debtors' assets are encumbered by Michaelson and, despite the diligent efforts of Debtors, Debtors have been unable to procure the required funding absent the proposed super priority liens and claims. Debtors have negotiated the best possible terms to obtain the funding they need to maintain sufficient liquidity to preserve their assets over the course of their Chapter 11 cases. Michaelson is unwilling to fund the DIP Financing without being granted a super priority lien. Accordingly, the first requirement of Bankruptcy Code section 364(d)(1) is satisfied.

### D. The DIP Facility Should Be Authorized as Fair and Reasonable and a Sound Exercise of Debtors' Business Judgment

26. The terms and Conditions of the DIP Facility are fair and reasonable and were negotiated by Debtors and Michaelson at arms-length and in good faith.

27. Moreover, approval of the DIP Facility will provide Debtors with immediate and ongoing access to funds to pay its current and ongoing operating expenses, including post-petition wages and salaries. Unless these expenditures are made, Debtors will be forced to cease operations, which would result in irreparable harm to the business, deplete going concern value, and jeopardize Debtors' ability to reorganize.

28. The credit provided under the DIP Facility is necessary to preserve and enhance the value of the estates for the benefit of all stakeholders. Additionally, the availability of credit under the DIP Facility will provide confidence to the employees, McLaren and MGH, thereby promoting a successful reorganization. Accordingly, the timely approval of the relief requested herein is imperative.

29. Debtors submit that the circumstances of this case require Debtors to obtain financing under Bankruptcy Code sections 364(c) and (d), and accordingly, the DIP Facility reflects the exercise of sound business judgment.

### E. Section 364(e) Protections Should Apply to the DIP Financing

30. The terms and conditions of the DIP Facility are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arms- length despite the relationships between the parties.

31. Accordingly, Michaelson and all obligations incurred under the DIP Facility should be accorded the benefits of Bankruptcy Code section 364(e).

**F. Interim Approval And Scheduling Of Final Hearing**

32. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit pursuant to Bankruptcy Code section 364, respectively, may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

33. Pursuant to Bankruptcy Rules 4001 (b) and (c), Debtors request that the Court conduct an expedited preliminary hearing on this motion and (a) authorize Debtors to borrow up to $712,559 under the DIP Facility on an interim basis, pending entry of a Final Order, in order to (i) maintain and finance the ongoing operations of Debtors, and (iii) avoid immediate and irreparable harm and prejudice to Debtors' estates and all parties in interest, and (b) schedule the Final Hearing.

34. Debtors have an urgent and immediate need for cash to continue to operate. Without post-petition financing Debtors will not have sufficient funds with which to operate the business on an ongoing basis during these Chapter 11 cases. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending the Final Hearing, Debtors will be immediately and irreparably harmed. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of Debtors and facilitating its reorganization efforts.

**G. Waiver of Bankruptcy Rules 6004(a) and (h)**

35. Debtors believe an efficient and expeditious approval and implementation of the DIP Facility is in the best interests of its creditors and other parties in interests. Accordingly,

Debtors seek waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of orders authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## V.
## NOTICE

36. Notice of this Motion is being provided to (i) the United States Trustee for the Northern District of Texas; (ii) Debtors' 20 largest unsecured creditors on a consolidated basis; and (iii) counsel to Michaelson. Debtors submit that, in light of the nature of the relief requested, no other or further notice is necessary or required.

WHEREFORE, Debtors respectfully request that the Court enter an order granting the relief requested herein and such other relief as is just and proper.

Dated: May 12, 2015

Respectfully submitted,

By: */s/ Kenneth Stohner, Jr.*
Kenneth Stohner, Jr.
State Bar No. 19263700
kstohner@jw.com
JACKSON WALKER L.L.P.
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 953-6000
(214) 661-6803 – Fax

**PROPOSED COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION PROTOM INTERNATIONAL, INC. AND PROTOM INTERNATIONAL, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2015, a true and correct copy of the foregoing was served via the Court's CM/ECF electronic notification system on all parties requesting same, and via facsimile, email and/or US first class mail, postage prepaid to the parties listed on the attached service list.

*/s/ Kenneth Stohner, Jr.*
Kenneth Stohner, Jr.

**SERVICE LIST**

**Debtor(s)**
ProTom International, LLC
1100 Parker Square, Suite 230
Flower Mound, TX 75028-7459

ProTom International, Inc.
1100 Parker Square, Suite 230
Flower Mound, TX 75028-7459

**United States Trustee**
Office of the United States Trustee
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX 75242
Fax: 214/ 767-8971

**Secured Lender**
Michaelson Capital Special
Finance Fund, LP
ATTN: V. Capone
400 Madison Ave., Suite 2A
New York, NY 10017
vcapone@michaelsoncapital.com

**20 Largest Unsecured Claims**

401 Edgewater LLC
P.O. Box 19479
Johnston, RI 02919
keri.brewer@hobbsbrook.com

Accelerated, LLC
605 Fulton Ave.
Rockford, IL 61103-4183
sue.cunningham@accmach.com

AccSys Technology, Inc.
ATTN: Accounts Payable
1177 Quarry Lane
Pleasanton, CA 94566
hseki@accsys.com

Anixter, Inc.
P.O. Box 847428
Dallas, TX 75284-7428
ryan.sullivan@anixter.com

Applied Power Quality Solutions, LLC
P.O. Box 14915
Scottsdale, AZ 85267-4915
edweiss@appliedpqs.com

ASTRO
P. O. Box 417217
Boston, MA 02241-7217
exhibitfinance@jspargo.com

Blue Cross & Blue Shield of Alabama
P.O. Box 360037
Birmingham, AL 35236-0037
Fax (205)220-9089

Buckley Systems
6 Bowden Rd
Mt Wellington Auckland 01060 New Zealand
bill.dodge@buckleysystems.com

ClearCube Technology, Inc.
P.O. Box 842223
Dallas, TX 75284-2223
finance@clearcube.com

East Coast Metrology, LLC
428A Boston Street
Topsfield, MA 01983
ray.ryan@eastcoastmetrology.com

Elavon
2 Concourse Parkway
Suite 800
Atlanta, GA 30328
john.urbach@elavon.com

Forte Automation Systems, Inc.
8155 Burden Road
Machesney Park, IL 61115
toby@forteautomation.com

Internal Revenue Service
P.O. Box 219690
Kansas City, MO 64121-9690
Fax: 267/941-1015

Jay Flanz, Ph. D.
75 Crossbow Lane
North Andover, MA 01845
nflan1@aol.com

LAURUS Systems, Inc.
3460 Ellicott Center Dr.
Suite 101
Ellicott City, MD 21043-4164
andrea@laurussystems.com

Massachusetts Institute of Technology
Cashier's Office NE49-3007
77 Massachusetts Avenue
Cambridge, MA 02139
jkelsey@mit.edu

McLaren Healthcare
G-3235 Beecher Road Suite B
Flint, MI 48532-3615
greg.lane@mclaren.org

Parker Hannifin Corp, Filt & Sep. Div.
7975 Collection Center Dr.
Chicago, IL 60693
ipanzini@parker.com

Pyramid Technical Consultants, Inc.
1050 Waltham St., Suite 200
Lexington, MA 02421
wnett@ptcusa.com

Stak Design
1540 Luna Road
Carrollton, TX 75006
hhankamer@stakdesign.com